IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOIYA M. H., | ) |
|     Plaintiff, | ) No. 23 C 1731 |
| v. | ) Magistrate Judge M. David Weisman |
| MARTIN O'MALLEY,<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Toiya M. H. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**Background**

In December 2020, plaintiff applied for benefits, alleging a disability onset date of January 28, 2018. (R. 203.) Her application was denied initially, on reconsideration, and after a hearing. (R. 74-100.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 33.) At step two, the ALJ found that plaintiff has the severe impairments of degenerative disc disease and obesity. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R. 33-34.) At step four, the ALJ found that plaintiff is unable to perform any past relevant work but has the RFC to perform sedentary work with certain exceptions. (R. 35-45.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 45-46.)

The ALJ said the record did not support plaintiff's complaints of hand weakness because "[it] indicates that her upper extremities . . . have longitudinally displayed full strength, range of motion and sensation, with full grip and dexterity." (R. 42.) Plaintiff says the ALJ's statement

2

about her grip strength is simply wrong, citing to the report of a January 2019 functional capacity evaluation ("FCE"). Among other things, the report says that plaintiff "demonstrated no difficulty with simple grasping" and had grip strengths of twenty-five pounds on the right and twenty-four pounds on the left. (R. 357.) Plaintiff, citing an article from the internet, contends that normal grip strength would be more than sixty pounds on each side, and thus the FCE did not show that she had full grip strength.

Even if the measurements in the FCE do not meet the norm for grip strength, there is no way the ALJ would have known that unless plaintiff raised it at the hearing, which she did not. Moreover, the occupational therapist who performed the evaluation concluded that plaintiff met the physical demands of her job as a bus driver, including continuous simple and firm grasping, and recommended that she "return to work, full duty." (R. 355-58.) Thus, the ALJ did not err when he said the FCE demonstrated that plaintiff had full grip strength.

Plaintiff also contests the ALJ's assessment of the December 2020 opinion of Dr. Omerovic, one of plaintiff's treating physicians. Dr. Omerovic said plaintiff had edema in both legs and sciatica in her back. (R. 364.) He also said she could sit and stand/walk no more than two hours of an eight-hour workday, she could not lift anything or use her hands, fingers, or arms, she could not twist, stoop, crouch, or climb stairs, and she would miss four workdays a month because of her impairments. (R. 365-66.) The ALJ found these opinions to be unpersuasive because:

> [T]hey suggest that the claimant is in an almost vegetative state. Dr. Omerovic's opinions are neither supported by nor are they consistent with the record, which indicates that the claimant is able to walk unassisted with an antalgic gait, that she has full strength, range of motion and sensation of her upper extremities with full grip and dexterity, that she has full sensation and range of motion of her lower extremities with some diminished strength and that her back pain improved after undergoing a series of steroid injections. This is more consistent with a finding that the claimant is able to perform work at the sedentary exertional level.

3

(R. 43-44.)

Plaintiff says the ALJ did not explain why Dr. Omerovic's opinions describe a person in a vegetative state. That hyperbole, though unhelpful, is not the basis for the ALJ's unfavorable assessment of Dr. Omerovic's opinions. Rather, as noted above, the ALJ said the opinions were not consistent with the other evidence in the record, and significantly, went on to explain why Dr. Omerovic's opinions were not consistent with the objective medical evidence in the record. (R. 44.). *See Karr v. Saul,* 989 F.3d 508, 512 (7th Cir. 2021) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record").

Plaintiff also faults the ALJ "for relying more on normal than abnormal findings" in assessing Dr. Omerovic's opinions. (ECF 15 at 7.) First, that argument seems to be a request for the Court to reweigh the evidence, which we cannot do. *See Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023) ("'We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.'") (quoting *Gedatus*, 994 F.3d at 900). Second, as discussed above, the decision shows that the ALJ considered the abnormal findings, but he did not find them to be persuasive. (R. 43-44.)

Plaintiff also contends that the ALJ did not determine the extent to which Dr. Omerovic's opinions were consistent with the consultative examination by Dr. Rafiq and the report from plaintiff's sister, Keela. Although he did not refer to Dr. Rafiq by name, the ALJ incorporated Dr. Rafiq's findings into his analysis of Dr. Omerovic's opinions. (*See* R. 42 (Dr. Rafiq finding that plaintiff walked unassisted with an antalgic gait, could not heel or toe walk, stand on one leg, or squat and rise, had limited range of motion in her lumbar spine, had unremarkable extremities except for 3-4/5 strength of the left lower extremity and limited range of motion of her left hip and

4

knee and a positive straight leg raising test); R. 44 (ALJ stating that "Dr. Omerovic's opinions are neither supported by nor are they consistent with the record," because it shows, inter alia, "that the claimant is able to walk unassisted with an antalgic gait . . . , that she has full sensation and range of motion of her lower extremities with some diminished strength"). Further, though the ALJ did not address Keela's report, he did not need to. Keela stated that plaintiff cannot stand, walk, or sit for long periods of time and cannot lift, squat, bend, or cook (R. 248-52), statements that echo plaintiff's testimony (R. 62-65). The Seventh Circuit has said that an ALJ's failure to address redundant evidence is not error:

> Carlson objects to the ALJ's failure to discuss his wife's testimony, which essentially corroborated Carlson's account of his pain and daily activities. We have repeatedly stated that the ALJ need not evaluate in writing every piece of testimony and evidence submitted. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984). . . . If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required. *Zblewski*, 732 F.2d at 78-79. But this is not such a case. The ALJ explicitly addressed Carlson's testimony concerning his pain and daily activities. Mrs. Carlson's testimony was essentially redundant. . . . The ALJ did not err by failing to discuss Mrs. Carlson's testimony explicitly.

*Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam). Thus, the ALJ did not err in failing to address Keela's report.

Plaintiff's last challenge is to the ALJ's evaluation of her reported symptoms, which the Court will disturb "only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). In making a credibility determination, an ALJ considers the claimant's daily activities; the location, duration, frequency, and intensity of her pain or other symptoms; precipitating and aggravating factors; the type and effect of any medication the claimant takes; treatment, other than medication, the claimant has received; any measures the claimant uses to relieve her pain or other symptoms; and any other

5

factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. § 416.929(c)(3). Here, the ALJ said:

> While the claimant testified that she uses a cane on a daily basis, the record indicates that she is still able to walk unassisted with an antalgic gait. . . . While the claimant testified that she has difficulty reaching overhead and that she has weakness of her hand, the record indicates that her upper extremities have been unremarkable upon inspection, as they have longitudinally displayed full strength, range of motion and sensation, with full grip and dexterity. An MRI of the claimant's lumbar spine revealed signs of degeneration at L4-L5. However, further testing failed to reveal any signs of discogenic pain. In addition, the claimant was informed that she was not a candidate for back surgery. The claimant was recommended on several occasions to eat healthy and to participate in physical therapy, which suggests that her symptoms could improve through the use of conservative treatment. While the claimant alleged that she experiences intermittent swelling of her lower extremities, notes from physical examinations indicate that her extremities have longitudinally been without swelling or deformity, and that Amlopidine was the likely cause of these symptoms. Notes from medical examinations have been mostly unremarkable with the exception of tenderness and a painful and limited range of motion of her lumbar spine and some mild weakness of her lower extremities. In addition, the claimant reported that she obtained moderate relief through the use of steroid injections, which allowed her to be more active during the day. This is consistent with a finding that the claimant is able to perform work at the sedentary exertional level.

(R. 42-43.) The Court finds no error in the ALJ's analysis.[1]

---

[1] The ALJ did not consider the effect of plaintiff's medications, but the error is harmless because plaintiff testified that she tries to reduce her pain without taking medication because of its adverse side effects. (R. 65-66.)

**Conclusion**

For the reasons set forth above, the Court affirms the Commissioner's decision and terminates this case.

**SO ORDERED.**                                **ENTERED:  April 9, 2024**

_____
**M. David Weisman**
**United States Magistrate Judge**